UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:11CV-118-JHM

JAMES COLE                                                                                    PLAINTIFF

VS.

MANAGEMENT & TRAINING
CORPORATION                                                                                 DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff James Cole's Motion to Alter and/or Amend Court's Order Granting Summary Judgment [DN 39]. At the request of the Court, the parties submitted supplemental briefs addressing the applicability of a "cat's paw" theory to Plaintiff's retaliation claim in light of two recent Supreme Court cases, Staub v. Proctor Hosp., 131 S.Ct. 1186, 1193, 179 L. Ed. 2d 144 (2011) and Vance v. Ball State University, 133 S. Ct. 2434, 186 L. Ed. 2d 565 (2013). Fully briefed, this matter is ripe for decision.

## I. BACKGROUND

On October 31, 2013, the Court granted summary judgment in favor of Defendant Management & Training Corporation on all of Plaintiff's claims, including a hostile work environment claim based on race and sex, a retaliation claim, and a claim based on unlawful termination. [Mem. Op. and Order, DN 37]. The Plaintiff subsequently asked the Court to reconsider summary judgment as to the hostile work environment claim and retaliation claim in his motion to alter or amend. The Court denied Plaintiff's motion as to the hostile work environment claim but ordered the parties to brief the issue of "cat's paw" liability for the retaliation claim. [Order, DN 46].

## II. STANDARD OF REVIEW

Motions to alter or amend judgments may be "made for one of three reasons: (1) An intervening change of controlling law; (2) Evidence not previously available has become available; or (3) It is necessary to correct a clear error of law or prevent manifest injustice." United States v. Jarnigan, 2008 WL 5248172, at *2 (E.D. Tenn. Dec. 17, 2008) (citing Fed. R. Civ. P. 59(e); Helton v. ACS Grp., 964 F. Supp. 1175, 1182 (E.D. Tenn. 1997)); see also GenCorp, Inc. v. Am. Int'l Underwriters, 178 F.3d 804, 834 (6th Cir. 1999). Rule 59(e) is not intended to be used to "'relitigate issues previously considered' or to 'submit evidence which in the exercise of reasonable diligence, could have been submitted before'" United States v. Abernathy, 2009 WL 55011, at * 1 (E.D. Mich. Jan. 7, 2009) (citation omitted); see also Browning v. Pennerton, 2008 WL 4791491, at * 1 (E.D. Ky. Oct. 24, 2008) ("[A] motion for reconsideration is not a vehicle to re-hash old arguments . . . ."); Elec. Ins. Co. v. Freudenberg–Nok, Gen. P'ship, 487 F. Supp. 2d 894, 902 (W.D. Ky. 2007) ("Such motions are not an opportunity for the losing party to offer additional arguments in support of its position."). Motions to alter or amend judgments under Rule 59(e) "are extraordinary and sparingly granted." Marshall v. Johnson, 2007 WL 1175046, at *2 (W.D. Ky. Apr. 19, 2007).

## III. ANALYSIS

This case poses some interesting questions dealing with the interplay between the definition of a supervisor, as discussed in Vance, and "cat's paw" liability, as examined in Staub. First, the parties initially disagree as to whether "cat's paw" liability extends to biased non-supervisory co-workers or whether it is limited to biased supervisors. Second, if Staub requires that the biased employees be supervisors, then the Court must determine, in this case, whether the members of the investigation team can be deemed supervisors by virtue of being delegated

certain duties and tasks. Third, assuming the first two questions are answered in the affirmative, the Court must finally examine whether the alleged retaliatory animus sufficiently tainted the investigation team's findings so as to raise a factual issue of liability under a "cat's paw" theory.

**A. Supervisors in a "Cat's Paw" Theory**

The first question is whether "cat's paw" liability as discussed in Staub is limited to situations in which the biased employee is a supervisor as does it extend to biased non-supervisory co-workers. Examining a "cat's paw" theory in a suit under the United Services Employment and Reemployment Act (USERRA), the Supreme Court concluded that "if a supervisor performs an act motivated by antimilitary animus that is *intended* by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable." Staub, 131 S.Ct. at 1194. The narrow holding of Staub only addressed "cat's paw" liability in the context of biased supervisors, not co-workers.

The Plaintiff insists that the Sixth Circuit extended "cat's paw" liability to biased non-supervisory co-workers long before Staub was decided. However, recently in Shazor v. Professional Transit Management, Ltd., 744 F.3d 948 (6th Cir. 2014), the court noted that it has yet to "rule[] on whether *Staub* can be applied, in particular cases, to the actions of employees who do not meet the definition of 'supervisor' enunciated in *Vance*." Shazor, 744 F.3d at 956. This open question gives rise to another. Does Vance control the definition of "supervisor" for the purposes of a "cat's paw" theory? The answer to the second question makes it unnecessary to answer the first.

"[A]n employee is a 'supervisor' for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim . . .

3

." Vance, 133 S. Ct. at 2439. The ability to make a "tangible employment action" means that the individual can "effect a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" Id. at 2443 (quoting Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)). Based on this definition, the question of whether an individual qualifies as a supervisor for purposes of Title VII can often be easily determined by the facts of the case or by agreement of the parties. In fact, the Supreme Court in Vance explained that the purpose of utilizing a less nebulous definition of supervisor is "to ensure that juries return verdicts that reflect the application of the correct legal rules to the facts." Id. at 2451. The Supreme Court expounded upon the logic in the following section:

> Under the definition of "supervisor" that we adopt today, the question of supervisor status, when contested, can very often be resolved as a matter of law before trial. The elimination of this issue from the trial will focus the efforts of the parties, who will be able to present their cases in a way that conforms to the framework that the jury will apply. The plaintiff will know whether he or she must prove that the employer was negligent or whether the employer will have the burden of proving the elements of the *Ellerth/Faragher* affirmative defense. Perhaps even more important, the work of the jury, which is inevitably complicated in employment discrimination cases, will be simplified. The jurors can be given preliminary instructions that allow them to understand, as the evidence comes in, how each item of proof fits into the framework that they will ultimately be required to apply. And even where the issue of supervisor status cannot be eliminated from the trial (because there are genuine factual disputes about an alleged harasser's authority to take tangible employment actions), this preliminary question is relatively straightforward.

Vance, 133 S. Ct. at 2450.

Based on the supplemental briefs, it is clear that the parties fiercely dispute whether Lea, Brewer, and Savage should be considered supervisors relative to Cole. On one hand, Defendant explains that the Supreme Court's limiting definition of "tangible employment action" excludes those individuals from being considered supervisors. Simply put, Defendant argues that Vance demonstrates that "Savage, Lea, and Brewer are not Cole's supervisors because they had no

authority to hire, fire, or fail to promote him." [Def. Supplemental Resp., DN 48, at 7]. On the other hand, Plaintiff characterizes Defendant's interpretation of <u>Vance</u> as one that would eviscerate "cat's paw" liability. In other words, Plaintiff contends that supervisors for the purposes of liability cannot be limited to only those individuals that can hire or fire because then "cat's paw" would only apply in a situation where one supervisor with the ability to terminate simply passes liability on to another supervisor with the same ability.

Plaintiff, in asserting a broader definition of supervisor, relies heavily upon the Supreme Court's discussion in <u>Vance</u> concerning the delegation of authority. Specifically, Plaintiff concentrates on Justice Alito's response to the dissent where he explained that employers would not be able to escape liability by attempting to concentrate decisionmaking power to a few individuals. If that situation arises, Justice Alito indicated as follows:

> And even if an employer concentrates all decisionmaking authority in a few individuals, it likely will not isolate itself from heightened liability under *Faragher* and *Ellerth*. If an employer does attempt to confine decisionmaking power to a small number of individuals, those individuals will have a limited ability to exercise independent discretion when making decisions and will likely rely on other workers who actually interact with the affected employee. . . . Under those circumstances, the employer may be held to have effectively delegated the power to take tangible employment actions to the employees on whose recommendations it relies.

<u>Vance</u>, 133 S. Ct.at 2452 (citations omitted).

<u>Vance</u> makes clear that an employer can delegate the power to take tangible employment actions to other employees. In doing so, those employees will be deemed supervisors. Therefore, the questions in this case can be resolved by determining whether the Defendant delegated to the members of the investigation team the authority to make tangible employment actions on behalf those with decisionmaking authority.

In reviewing the evidence in the present case, the Court finds several facts to establish that by being on the investigation team that Brewer, Lea, and Savage can be considered

5

supervisors for "cat's paw" liability. First, there seems to be little doubt that Defendant created the investigation team and assigned it the task of soliciting information about the workings of the center and making recommendations concerning the personnel. This is unlike an unsolicited complaint coming from a non-supervisory co-worker. Second, the report produced by the investigation team specifically called for the immediate termination of Cole, which almost immediately occurred following the investigation. In fact, the report was not just limited to recommending the termination of Plaintiff but it also called for multiple personnel actions, including the termination of his supervisor, Cooper. Finally, the "Notice of Caution," the document terminating Plaintiff, appears to be almost a verbatim reproduction of the investigation team's report. This fact alone lends credence to the assertion that the Defendant effectively delegated to the members of the investigation team the power to take tangible employment actions. The investigative team acted more in the role of a supervisor providing an employee evaluation. Based on these facts, Plaintiff offers enough evidence to show that as a matter of law Brewer, Savage, and Lea qualify as supervisors under Vance by virtue of their participation on the investigation team.

**B. Application of "Cat's Paw" Theory**

In order to find liability under a cat's paw theory, Plaintiff must establish two elements: (1) a biased supervisor "*intended* . . . to cause an adverse employment action" and (2) their discriminatory action was "a proximate cause of the ultimate employment action." Staub, 131 S.Ct. at 1194. As for the second element, "[p]roximate cause requires only some direct relation between the injury asserted and the injurious conduct alleged." Id. at 1192 (internal quotation marks and citation omitted). However, unlike the claim in Staub that involved USERRA, Title VII retaliation claims mandate a showing of but-for causation, which "requires proof that the

unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." University of Texas Southwestern Medical Center v. Nassar, 133 S. Ct. 2517, 2533, 186 L. Ed. 2d 503 (2013). Thus, it is under the but-for causation standard that the "cat's paw" theory must be examined in this case.

Because the "but-for" standard for retaliation cases is a relatively recent change in case law, very few courts have had the opportunity to apply the causal model in a "cat's paw" case. The Tenth Circuit in Simmons v. Sykes Enterprises, Inc., 647 F.3d 943, 949 (10th Cir. 2011) examined the causal element for a "cat's paw" theory in an ADEA case, which also necessitates a finding of a but-for relationship. In clarifying the difference between the causal standards, the court noted, "If we were to apply *Staub* directly to an age-discrimination case, the plaintiff would then only need to prove her supervisor's animus was somehow related to the termination and not that the animus was necessary to bring about the termination." Id. To demonstrate the distinction between the two approaches, the court provided the following example:

> To illustrate, a supervisor's animus might be a "but-for" cause of termination where, for example, the biased supervisor falsely reports the employee violated the company's policies, which in turn leads to an investigation supported by the same supervisor and eventual termination. Or the biased supervisor may write a series of unfavorable periodic reviews which, when brought to the attention of the final decision-maker, serve as the basis for disciplinary action against the employee. But where a violation of company policy was reported through channels independent from the biased supervisor, or the undisputed evidence in the record supports the employer's assertion that it fired the employee for its own unbiased reasons that were sufficient in themselves to justify termination, the plaintiff's age may very well have been in play—and could even bear some direct relationship to the termination if, for instance, the biased supervisor participated in the investigation or recommended termination—but age was not a determinative cause of the employer's final decision.

Id. at 950.

In the present case, there is little dispute that a report from the DOL initially triggered the investigation team's activities. While Plaintiff argues that the entire investigatory team was

7

biased, the record thus far shows that at least one of the five-member investigation team, Brewer, allegedly made a statement indicating retaliatory animus. While it is difficult for the Court to exactly surmise the level of Brewer's involvement on the investigation team, the report does show that she directly participated to some degree. Notably, the "Summary of Investigation" report specified that Savage, Brewer, and Lea interviewed career technical instructors on behalf of the investigation team and relayed their concerns in that report. [Summary of Investigation, DN 30-14, at 2]. Those statements prepared by Lea, Brewer, and Savage in the summary are found almost verbatim in the Plaintiff's Notice of Caution. [Notice of Caution, DN 30-16, at 4-5]. Plaintiff contends that the reasons cited in his termination letter were not duties associated with his job but were those of the people who were on the investigation team or other individuals at the facility. Assuming Plaintiff is correct on that issue, he will still carry the burden at trial of showing that retaliatory animus was the determinative reason for his termination as opposed to any other reason. At this time, the Court believes that he has asserted sufficient evidence to suggest that Jon Pederson acted as the cat's paw by adopting the investigation team's report that recommended his termination. Therefore, Plaintiff may pursue his retaliation claim under this theory.

## IV. CONCLUSION

Plaintiff James Cole's Motion to Alter and/or Amend Court's Order Granting Summary Judgment [DN 39] is **GRANTED** as to the retaliation claim. The judgment entered on October 31, 2013 [DN 36] is **VACATED** consistent with this opinion.


cc: counsel of record